Stacy TATE, Appellant,

v.

GOINS, UNDERKOFLER, CRAWFORD & LANGDON, John J. Sheedy, and Richard E. Schellhammer, Appellees.

No. 05–96–01097–CV.

Court of Appeals of Texas, Dallas.

July 31, 2000.

628

John E. Collins, Dallas, for Appellant.

John D. Rosenberg, Goins Underkofler Crawford & Langdon, LLP, Dallas, for Appellees.

Before Justices MORRIS, JAMES, and MOSELEY.

## OPINION ON REHEARING

Opinion by Justice JAMES.

This Court granted appellant Stacy Tate's motion for rehearing and heard oral argument. Having withdrawn our previous opinion of August 31, 1998, we substitute this opinion in its place.

In this case we must decide whether the trial court properly granted summary judgment for appellees, Goins, Underkofler, Crawford & Langdon, John J. Sheedy and Richard E. Schellhammer (collectively "Goins"), on Tate's legal malpractice cause of action. We conclude, based on the facts of this case, that although the assignment of the legal malpractice claim by Tate was invalid, summary judgment was improper and Tate may prosecute his claim against Goins. We reverse the trial court's judgment and remand this case to the trial court for further proceedings in accordance with this opinion.

This case has had an extended history before the Court. Appeal was perfected in July, 1996 and briefs were filed in October of that year, making the case ripe for submission. On March 25, 1998, the case was submitted after oral argument was heard by this panel. Our opinion affirming the trial court's summary judgment was issued August 31, 1998. Appellant filed a motion for rehearing on September 15, 1998 which remained pending until February 11, 2000. On that date we granted the motion for rehearing, withdrew our opinion and vacated our judgment of August 31, 1998. We suggested the parties rebrief the issues in the case, specifically issues addressed in the Texas Supreme Court's recent opinion in *Mallios v. Baker*, 11 S.W.3d 157 (Tex.2000).[1] We

---

1. *Mallios* was heard by the supreme court in December, 1998, but the opinion was not

set the case for hearing on March 9, 2000. Following oral argument on that date before the original panel, the case was again submitted for our decision which follows.

### THE UNDERLYING CLAIM

Tate retained Goins to file a collection suit in Tarrant County against SIDCO International Distribution Corporation of Texas, d/b/a South Texas Sales (SIDCO). After Goins filed the Tarrant County action, SIDCO filed a damages claim in Bexar County. Goins represented Tate in the Bexar County matter as well. According to appellee John Sheedy, one of the attorneys assigned to Tate's case, he prepared a plea in abatement to be filed in Bexar County, but it was never verified or filed. Sheedy maintains he tried to contact Tate on several occasions to obtain Tate's verification of the plea, but Tate contends he never received any communication from Goins regarding the verification.

No answer was filed on behalf of Tate in the Bexar County lawsuit. Sheedy maintains SIDCO's counsel agreed to an extension of time to file an answer, but SIDCO changed counsel and its new attorney did not honor the agreed-upon extension of time. Instead, SIDCO's new attorney sought and obtained a default judgment against Tate in the amount of $233,166.66. Goins filed a motion for new trial on Tate's behalf which was denied by the trial court. Tate obtained new counsel who filed a motion to reconsider the motion for new trial. Before the trial court ruled on this motion, Tate and SIDCO entered into a settlement agreement.

Under the terms of the settlement agreement, Tate agreed to terminate the Tarrant County action and SIDCO agreed not to execute on the judgment in exchange for Tate's agreement to assign a portion of the proceeds of his malpractice suit against Goins to SIDCO. In the agreement, Tate and his company are called "TATES," SIDCO is called "SIDCOT," the law firm and attorneys are

called "SSGOINS," and the law firm, alone, is referred to as "GOINS." In pertinent part, the parties agreed to the following:

6. TATES agree to prosecute, fully cooperate and diligently pursue any and all claims against GOINS as directed by SIDCOT; SIDCOT having without limitation the rights to direct the litigation, negotiate and settle any and all claims between the parties. SIDCOT agrees to consult with TATES regarding any such action but reserves all rights of final decision. Should SIDCOT, in its sole discretion determine that its best interest [sic] are served by an assignment, TATES agree that upon demand they will assign, transfer, set over and deliver to SIDCOT all claims, demands, and causes of action of whatsoever kind and nature which TATES have against GOINS, or any other person or persons, and in each and any of them, whether jointly or severally arising out of the relationship between TATES and GOINS. All costs of litigation are to be advanced by SIDCOT. TATES shall not be responsible for any costs of litigation, attorney's fees or other expenses associated with the prosecution of the case of GOINS.

7. SIDCOT hereby agrees and covenants that it shall not attempt to collect, levy, execute, garnish or effectuate any other collection process, including abstract of JUDGMENT against any assets, or property, of any kind, character or description, of TATES, with the sole exception of those rights and causes of action belonging to TATES against GOINS.

\* \* \*

9. Gross Recovery (GR) shall mean the total amount collected of, from, or

issued until more than a year later on January 6, 2000.

through GOINS before all attorney's fees, court cost and litigation expenses related to the prosecution of GOINS are deducted. Adjusted Gross Recovery (AGR) shall mean the GR after payment of all cost of prosecution and attorney's fees. TATES shall only receive from the AGR (a) credit for outstanding legal fees owed SSGOINS, if any; and (b) the outstanding balance on the original contract between TATES and SIDCOT.

10. Net Recovery (NR) shall mean that AGR amount received from GOINS less those amounts payable to TATES or for TATES' benefit pursuant to Paragraph 9, less all attorney's fees, court cost and litigation expenses actually incurred by SIDCOT in Cause No. 92–CI–03173 in Bexar County and in Cause No. 153–139808–92 in Tarrant County. TATES shall receive Ten Percent (10%) of the NR of the first Two Hundred Fifty Thousand Dollars ($250,000.00) or THREE THOUSAND TWO HUNDRED FIFTY DOLLARS ($3,250.00), whichever is greater, and Fifty Percent (50%) of any amount in excess of Two Hundred Fifty Thousand Dollars ($250,000.00), but in no event shall TATE receive a total amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) from the GR.

\* \* \*

13. The parties upon the conclusion of the litigations against GOINS as contemplated herein shall execute mutual releases.

The agreement does not contain a severability clause.

On October 25, 1994, Tate filed suit against Goins alleging legal malpractice stemming from the representation in the Bexar County suit. Goins moved for summary judgment on five grounds: (1) Tate cannot recover against Goins for malpractice because he has settled his claims in the underlying cases; (2) Tate is not the real party in interest in this case and the assignment of his malpractice claim to SIDCO violates public policy; (3) the damages are too speculative to recover because no money changed hands in the settlement of the underlying claims; (4) Tate caused the default judgment by failing to verify the plea in abatement and by failing to cooperate with his defense in the Bexar County suit; and (5) the statute of limitations barred the legal malpractice claim. The trial court granted the summary judgment without stating specific grounds for the ruling.

In six points of error, Tate argues the trial court erred in granting summary judgment for Goins because (1) Tate's settlement of the underlying case did not preclude recovery on his legal malpractice claim, (2) the damages were not too speculative to permit recovery, (3) Tate did not assign his legal malpractice claim, (4) if an impermissible assignment occurred, it does not effect Tate's cause of action against Goins brought by Tate, himself, (5) a fact issue was created on the issue of whether Tate's failure to verify the plea in abatement was the reason a default judgment was entered against him, and (6) the legal malpractice claim was not barred by the statute of limitations.

## STANDARD OF REVIEW

 The purpose of the summary judgment rule is not to provide either side a trial by deposition or a trial by affidavit; rather, it provides a method of summarily terminating a case when it clearly appears only a question of law is involved and there is no genuine issue of fact remaining. *See Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). Because the trial court granted summary judgment in this case on February 23, 1996, the "no evidence" summary judgment provisions of Texas Rule of Civil Procedure 166a(i) do not apply to this judgment. *See* TEX.R.

CIV. P. 166a(i) (effective September 1, 1997). Thus, to obtain summary judgment, Goins, as movants, had the burden of showing there was no genuine issue of material fact and they were entitled to summary judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the nonmovant as true. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *See id.*

■ Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or conclusively establishes all elements of an affirmative defense. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue as to the elements negated. *See Torres v. Western Cas. & Sur. Co.*, 457 S.W.2d 50, 52 (Tex.1970); *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 286 (Tex.App.-Houston [1st Dist.] 1991, writ denied). We uphold a summary judgment on any ground that is supported by the evidence and pleadings. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Because the order granting summary judgment does not specify the particular grounds on which the trial court relied, to prevail on appeal, Tate must defeat each ground for summary judgment presented by Goins' motion. *See id.*

### APPLICATION

In their first ground for summary judgment, Goins argued Tate is precluded from recovering on his malpractice claim because he settled the claims in the underlying lawsuits; thus, there is no proximate cause of any injury. Within this ground,

Goins also argued the settlement agreement was a superseding and intervening cause of Tate's damages, the "one satisfaction rule" applies, and the public policy encouraging settlement agreements bars Tate from recovering on his legal malpractice claim. As their third ground, Goins argued because Tate has already settled with SIDCO, any damages he suffered from the alleged malpractice are too speculative to permit recovery. By presenting these arguments in their first and third grounds, Goins was effectively asking the court to recognize the validity of the settlement agreement to the extent it relieves Goins' liability to Tate. Conversely, as their second ground for summary judgment, Goins argued Tate assigned his legal malpractice claim to SIDCO, SIDCO was the real plaintiff, and the assignment is against public policy and thus unenforceable through Tate by SIDCO as the real party in interest. In effect, by urging their second ground, Goins sought to invalidate the settlement agreement.

Because the trial court did not state the reason for which it granted summary judgment, and because all three issues framed by Goins' first three grounds for summary judgment are raised on appeal, we must address each ground as a possible means to support summary judgment. Therefore, unlike the Texas Supreme Court in its recent decision in *Mallios v. Baker*, 11 S.W.3d 157 (Tex.2000), discussed in greater detail below, we must decide whether the agreement is an assignment and, if so, whether Tate's legal malpractice claim assigned to SIDCO was enforceable against Goins. For purposes of clarity and logic, we first address Tate's third point of error where he argues he did not assign his legal malpractice claim. Then we address Tate's fourth point of error where he contends summary judgment was improper even if the settlement agreement was an assignment.

■ In his third point of error, which relates to Goins' second ground for summary judgment, Tate argues the settle-

ment agreement with SIDCO did not constitute an assignment of his legal malpractice claim against Goins because the agreement merely contemplates a future assignment. He also argues there is no evidence to show SIDCO, rather than Tate, was the real party in interest.

■ The general rule in Texas is that causes of action are assignable. *See* TEX. PROP.CODE ANN. § 12.014 (Vernon Supp. 2000). This general rule, however, does not apply to all legal malpractice claims. Although the Texas Supreme Court has not precluded the transfer of legal malpractice claims, the "Court has disapproved voluntary assignments of legal malpractice claims that necessitate a duplicitous change in the positions taken by the parties in antecedent litigation," and has "expressed reservation about any commercial marketing of legal malpractice claims." *Mallios,* 11 S.W.3d at 164 (Hecht, J., concurring).

In *Mallios,* the issue was whether summary judgment was proper for the defendants, an attorney and a law firm, when the plaintiff had assigned a portion of his claim to a third party in a purely commercial transaction. *See id.* at 159. While not reaching the question of whether the agreement between the plaintiff and the third party violated public policy, the Court found summary judgment was improper under those particular facts because, even if invalid, the assignment did not vitiate the plaintiff's right to pursue his own malpractice claim. *Id.*

In an earlier case, *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313 (Tex. App.-San Antonio, 1994, writ ref'd), the Texas Supreme Court, by refusing to grant writ of error, declared that the court of appeals' judgment was correct when it invalidated an assignment of a legal malpractice claim between adversaries in the underlying litigation. In *Zuniga,* the plaintiffs settled with the defendant in return for an assignment of the defendant's malpractice claim against its attorney. *See id.* at 314. The court focused its at-

tention on the reversal in positions between the former adversaries and characterized the assignment as "a transparent device to replace a judgment-proof, uninsured defendant with a solvent defendant." *Id.* at 317. In denouncing the assignment of legal malpractice claims that arise out of litigation, the court made the following public policy consideration:

> To allow such assignments would serve two principal goals: enabling the defendant-client to extricate himself from liability, and funding the original plaintiff's judgment. But to allow assignments would exact high costs: the plaintiff would be able to drive a wedge between the defense attorney and his client by creating a conflict of interest; in time, it would become increasingly risky to represent the underinsured, judgment-proof defendant; and the malpractice case would cause a reversal of the positions taken by each set of lawyers and clients, which would embarrass and demean the legal profession.

*Id.* In conclusion, the court held that this assignment of a legal malpractice action arising from litigation is invalid because the costs to the legal system outweigh the benefits. *See id.* at 318.

The facts in the case before us are closely analogous to the facts in *Zuniga* with one exception: unlike the assignor in *Zuniga,* Tate retained some interest in his malpractice claim and brought suit in his own name, not in SIDCO's name. Tate argues the agreement was not an actual assignment, but merely contemplates an assignment in the future of any proceeds. We disagree.

Under the terms of the agreement, Tate retained only approximately ten percent of any net recovery. He also gave SIDCO, his former adversary, absolute control over the litigation, including the unfettered right to settle the malpractice suit on such terms as SIDCO determines. The agreement further provides SIDCO may require an assignment of all Tate's claims against

Goins, if SIDCO determines that to be in its best interests. We conclude the parties in this case are in the same situation as the parties in *Zuniga:* two former adversaries joined together for the purpose of "enabling the defendant-client to extricate himself from liability, and funding the original plaintiff's judgment." *See id.* at 317. The provisions of the Tate/SIDCO settlement agreement which relate to the assignment of the malpractice cause of action demonstrate the same evils as the assignment in *Zuniga.* Therefore, we conclude the provisions of the agreement related to Tate's malpractice claim constitute an assignment that violates public policy. In the absence of a valid assignment, it follows that there is no showing SIDCO was the real party in interest. Accordingly, we overrule Tate's third point of error to the extent he argues there was no assignment, but sustain the point to the extent Tate argues there is no evidence to show SIDCO is the real party in interest.

■ In his fourth point of error, which also relates to Goins' second ground for summary judgment, Tate asserts the trial court erred in granting summary judgment for Goins because Tate's right to bring the legal malpractice claim in his own name would not be affected by any invalid assignment of his malpractice claim to SIDCO. Tate emphasizes he sued in his own name and, therefore, summary judgment was improper because it completely abrogated his right to bring a malpractice claim.

In this respect, Tate is correct. In *Mallios,* the Texas Supreme Court held that when there is a purported partial assignment of a legal malpractice claim, the plaintiff's right to bring his own cause of action for malpractice is not vitiated by the invalid assignment. *Mallios,* 11 S.W.3d at 159. While expressing no opinion on the validity of the underlying "arrangement" between the plaintiff and a third party, the court found summary judgment was improper and the plaintiff could continue his malpractice suit against

his attorney and law firm. *Id.* We find the holding in *Mallios* controlling on this issue and sustain Tate's fourth point of error.

■ Next, we consider Tate's first and second points of error where he argues summary judgment was not proper on the basis that Tate's claim was barred by his settlement with SIDCO, and the damages were too speculative because Tate had settled with SIDCO without any money changing hands. These relate, in part, to Goins' first and third grounds for summary judgment. If the trial court granted summary judgment on either of these grounds, it must have rejected Goins' second ground for summary judgment to the effect the agreement was an invalid assignment and SIDCO was the real party in interest. Goins argued it was entitled to summary judgment because, as a result of Tate's settlement of the underlying case, Goins' actions could not be a proximate cause of Tate's damages, or stated differently, Tate's decision to settle with SIDCO was an intervening cause of his damages. Goins characterizes Tate's settlement of the underlying suit as "voluntary" and contends Tate's settlement, as a matter of law, severed any causative link between Goins' alleged actions and any damages suffered by Tate. However, in his response to Goins' summary judgment motion, Tate produced his own affidavit in which he stated that, as a result of the default judgment entered against him in the underlying suit, he was "forced to settle" with SIDCO because he could not post a supersedeas bond in the amount of the judgment, and if he failed to post the bond, he would likely have lost his business and personal assets, or he would have been forced to file bankruptcy. This evidence raises a fact issue as to whether Goins' alleged malpractice effectively forced Tate to mitigate his damages by settling the underlying suit. Under these circumstances, we cannot conclude Goins conclusively negated the proximate cause element of Tate's negligence claim. Therefore, summary judgment was im-

proper on Goins' first ground. We sustain Tate's first point of error.

In their third ground for summary judgment, Goins contended Tate's damages in this case are too speculative to permit recovery and they were entitled to judgment as a matter of law because Tate was relieved of liability for the judgment without any money changing hands, and further argued by settling with SIDCO, Tate waived his claim against Goins. To prevail on his legal malpractice claim, Tate must prove that he was damaged. *See Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995). While uncertainty as to the *amount* of damages is not fatal to recovery, lack of evidence or uncertainty as to the *fact* of damages is. *See Pace Corp. v. Jackson,* 155 Tex. 179, 190, 284 S.W.2d 340, 348 (1955). Damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts. *A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.,* 798 S.W.2d 606, 615 (Tex.App.-Dallas 1990, writ denied). Remote damages, or those damages that are purely conjectural, speculative, or contingent, are too uncertain to be ascertained and cannot be recovered. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.* 835 S.W.2d 190, 205 (Tex.App.-Austin 1992, no writ); *Roberts v. U.S. Home Corp.,* 694 S.W.2d 129, 135 (Tex.App.-San Antonio 1985, no writ).

To properly obtain summary judgment on this ground, Goins was required to conclusively negate the existence of Tate's alleged damages. *See* Tex.R. Civ. P. 166a(c). In response to Goins' motion, Tate argued that an outstanding judgment in the amount of $233,166.66 which, according to Tate, was a direct result of Goins' failure to file an answer on his behalf in Bexar County, is not speculative; indeed, Tate argued his measure of damages is very concrete.

We conclude the existence of a final judgment in Bexar County is sufficient evidence to raise a fact question as to the existence and amount of damages. Because Goins failed to conclusively negate the existence of damages and the alleged damages are not too speculative to permit recovery, summary judgment was improper on this ground. In sustaining the fourth point of error we have addressed the contention that Tate waived his legal malpractice claim against Goins by his settlement with SIDCO. Accordingly, we also sustain Tate's second point of error.

In his fifth point, Tate argues summary judgment was improper because a fact issue was created on the issue of why a verified plea in abatement was not filed in the underlying lawsuit. We agree a fact issue exists on why the verified plea was not filed. The affidavit of John Sheedy was attached to Goins' motion for summary judgment. In his affidavit, Sheedy stated in that October 1992, he made at least two telephone calls to Tate requesting Tate return the affidavit in support of the plea in abatement. Attached as an exhibit to Sheedy's affidavit is a copy of a letter from Sheedy to Tate dated October 7, 1992 in which Sheedy asked Tate to sign and return the affidavit.

In his response to Goins' motion for summary judgment, Tate attached his affidavit stating he never received any correspondence or pleadings from Goins during October 1992. Tate claims also he never received any telephone calls from Sheedy. Thus, a fact issue exists as to why the verified plea in abatement was not filed in the Bexar County lawsuit. Summary judgment was improper on Goins' fourth ground for summary judgment. We sustain Tate's fifth point of error.

In his sixth and final point, Tate argues summary judgment could not have been based on Goins' fifth ground that the statute of limitations had run on his legal malpractice claim. A cause of action for legal malpractice is in the nature of a tort subject to the two-year limitations statute. *See* Act of May 27, 1979, 66th

Leg., R.S., ch. 716 § 1, 1979 Tex. Gen. Laws 1768, 1768, *amended by* Act of May 27, 1995, 74 th Leg., R.S., ch. 739 § 2, 1995 Tex. Gen. Laws 3850, 3850, *amended by* Act of April 17, 1997, 75 th Leg., R.S., ch. 26, § 2, 1997 Tex. Gen. Laws 68, 68 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2000)); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). For a suit to be timely under the two-year statute, usually it must be brought within two years following the date the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp.2000). The question of when a cause of action accrues is a question of law. *Willis*, 760 S.W.2d at 644; *Black v. Wills*, 758 S.W.2d 809, 815 (Tex.App.-Dallas 1988, no writ).

 The determination of the date of accrual of a legal malpractice claim is typically governed by applying either the legal injury rule or the discovery rule. Under the legal injury rule, a cause of action sounding in tort generally accrues and the statute of limitations begins to run when the tort is completed, that is, when the act is committed and the damage is suffered. *Black*, 758 S.W.2d at 816. The date of the legal injury is not the time it is discovered or the date when the extent of actual damage is fully ascertained. *Id.* Under the discovery rule, the statute of limitations for a tort, including a legal malpractice claim, does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action. *Willis*, 760 S.W.2d at 644. Unlike other torts, the statute of limitations on accrued legal malpractice claims is tolled until all appeals on the underlying case are exhausted. *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991).

The application of this unique tolling provision has caused some confusion as to when a cause of action for legal malpractice accrues for application of the statute of limitations as opposed to when the claim may be prosecuted. In *Willis*, the supreme court concluded the statute of limitations for legal malpractice actions does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action. *Willis*, 760 S.W.2d at 646. Three years later, in two cases decided the same day and a third two weeks later, the supreme court addressed the issue somewhat differently, announcing a "new rule tolling limitations until all appeals of the underlying claim are exhausted when an attorney allegedly commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation." *Aduddell v. Parkhill*, 821 S.W.2d 158, 159 (Tex.1991); *see also Hughes*, 821 S.W.2d at 157; *Gulf Coast Inv. Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex.1991).

Tate argues the legal injury rule applies to the present case and contends he sustained the legal injury on January 6, 1993 when the trial court refused to set aside the default judgment. Tate filed this suit on October 25, 1994, less than two years later.

Goins responds that the discovery rule applies and Tate should have discovered the malpractice on September 18, 1992 when he was present at a SIDCO representative's deposition. During the deposition, SIDCO's counsel requested Sheedy file an answer in the Bexar County suit. Sheedy replied he would get to it. Goins argues that Tate became aware of his alleged claim on September 18, 1992 and because the case was not filed until October 25, 1994, the two-year statute of limitations had run.

We disagree with both parties as to the date the cause of action accrued. We conclude Tate's legal malpractice claim accrued on October 26, 1992 when the Bexar County trial court entered the default judgment against Tate. We further conclude the accrual date would be the same under either the discovery rule or the legal

injury rule. This suit was filed on October 25, 1994, and therefore, was within the two-year statute of limitations. Accordingly, summary judgment would have been improper on the statute of limitations grounds. We sustain Tate's sixth point of error.

### DISPOSITION

Out of Tate's six points of error, we have sustained all but a portion of one. We overruled that part of Tate's third point of error where he argued there was no assignment of his malpractice claim. For us to affirm the trial court's judgment on the basis that Tate had assigned his claim, we would have had to conclude also that the summary judgment evidence proved SID-CO, rather than Tate, is the real party in interest. We concluded otherwise. Because none of Goins' grounds for summary judgment support the trial court's judgment, we reverse the trial court's granting of summary judgment on Tate's legal malpractice claim against Goins. We remand this case to the trial court for further proceedings in accordance with this opinion.