# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50235

ERIC M. SANDERS,

Plaintiff - Appellant

v.

HAROLD H. FLANDERS,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**
April 22, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:10-CV-192

Before WIENER, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Eric Sanders appeals the district court's grant of a judgment as a matter of law in favor of Defendant-Appellee Harold Flanders. Sanders retained Flanders to prepare and file various patent applications with the United States Patent and Trademark Office ("PTO"). Unsatisfied with Flanders's work, Sanders sued Flanders, asserting various Texas state-law claims. Because Sanders failed to present legally sufficient evidence of a necessary element of each of his claims (damages), we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50235

## I. Factual and Procedural Background

Flanders prepared numerous patent applications over a period of several years regarding Sanders's invention of an effervescent mouthwash tablet and filed them with the PTO on Sanders's behalf. None of these applications was approved. After discovering that he no longer had any applications pending and alleging that Flanders had misrepresented the status of the applications, Sanders sued Flanders claiming: (1) legal malpractice and professional negligence; (2) common-law fraud; (3) negligent misrepresentation; (4) breach of fiduciary duty; and (5) gross negligence. In connection with these claims, Sanders alleged that he suffered damages in the form of lost profits, out-of-pocket expenses, and attorney's fees. In his filings in the district court, Sanders asserted that the conduct underlying, and the damages caused by, each of the causes of action were the same.

With respect to lost-profit damages, Sanders testified at trial that he lost potential investors as a result of Flanders's conduct. Sanders also generally testified as to the existence of a *pro forma* model developed by potential investors and a case study performed by university students that evaluated the viability of a business model based on his invention. Sanders did not testify as to the substance of the *pro forma* model or viability study; he asserts that he was barred from doing so when the district court sustained Flanders's hearsay objections to such evidence.

Sanders also testified that he had out-of-pocket costs that were "roughly" $40,000–$50,000, but he did not provide any additional evidence apart from this vague testimony to support this claim. With respect to attorney's fees, Sanders testified that he paid Flanders's fees in the amount of $10,000–$15,000, but could not produce any evidence to support his claim that he paid such fees. Flanders testified that Sanders only had paid him approximately $3,800.

2

No. 13-50235

After Sanders rested his case, Flanders moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The district court granted the motion, holding that Sanders failed to present legally sufficient evidence of causation and damages. Sanders appealed to the United States Court of Appeals for the Federal Circuit, which transferred the appeal to us based on *Gunn v. Minton*, 133 S. Ct. 1059 (2013).

## II. Jurisdiction

While the Federal Circuit has exclusive jurisdiction over claims arising under federal patent law, *see* 28 U.S.C. § 1295(a), state-law malpractice claims based on underlying patent issues "rarely, if ever, arise under federal patent law." *Gunn*, 133 S. Ct. at 1065; *see also MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 841–43 (11th Cir. 2013) (applying *Gunn* to conclude that the Federal Circuit did not have exclusive jurisdiction to consider an appeal of a breach of contract action that required the resolution of a claim of patent infringement). Similar to the Court's analysis in *Gunn*, Sanders's claims—while important to the present litigants—do not carry the level of significance with respect to federal patent law to establish jurisdiction exclusively in the Federal Circuit.[1] *See Gunn*, 133 S. Ct. at 1067 (explaining that state legal-malpractice claims generally involve hypothetical, backward-looking questions that "will not change the real-world result of the prior federal

---

[1] Although *Gunn* involved only a legal-malpractice claim, the fact that Sanders raises other claims in addition to his legal-malpractice theory is not a material difference. By Sanders's own assertions, all of his claims present the type of hypothetical, backward-looking questions that do not implicate significant matters of federal patent law such that exclusive jurisdiction lies in the Federal Circuit. *See USPPS, Ltd. v. Avery Dennison Corp.*, 541 F. App'x 386, 390 (5th Cir. 2013) (unpublished) (observing that a party's claims for fraud and breach of fiduciary duty, rather than malpractice, did not command a different result than that in *Gunn* because this difference "does not cause the underlying hypothetical patent issues to be of substantial importance to the federal system as a whole, as required for exclusive federal jurisdiction under *Gunn*").

3

No. 13-50235

patent litigation"). Therefore, we have appellate jurisdiction over this diversity action. *See* 28 U.S.C. §§ 1291, 1332.

### III. Discussion

We review a district court's ruling on a motion for judgment as a matter of law *de novo*. *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 525 (5th Cir. 2009). A judgment as a matter of law "is appropriate when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* (quoting FED. R. CIV. P. 50(a)(1)). In a diversity case, we apply the substantive law of the forum state. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).

To prevail on any of his five claims, Sanders had to demonstrate, *inter alia*, that Flanders's conduct caused damages, a point he does not contest.[2] It is well settled that damages cannot be established merely through speculation or conjecture. *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 635 (Tex. App.—Dallas 2000, pet. denied) (explaining that "[r]emote damages, or those damages that are purely conjectural, speculative, or contingent, are too uncertain to be ascertained and cannot be recovered"). Granting a judgment as a matter of law with respect to damages, the district court concluded that "Sanders's damages testimony was too speculative as to lost investors and lost profits, and unsubstantiated by competent proof as to out-of-pocket expenses and legal fees, to be recoverable." Because we agree

---

[2] *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (legal malpractice); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation); *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.) (breach of fiduciary duty); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721 (Tex. App.—San Antonio 1994, no writ) (gross negligence); *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 296 (Tex. App.—El Paso 1992, no writ) (common-law fraud).

and affirm the district court's grant of Flanders's Rule 50(a) motion on this basis, we need not address whether Sanders presented sufficient evidence with respect to the element of causation—an alternative ground on which the district court granted relief.

### A. Lost Profits

A lack of profit history will not render a plaintiff unable to secure lost-profit damages; however, a plaintiff must establish his damages through "competent evidence with reasonable certainty." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001); *see also Hiller v. Mfrs. Prod. Research Grp. of N. Am., Inc.*, 59 F.3d 1514, 1521–23 (5th Cir. 1995). The amount of lost profits sought need not be exact, but it cannot be uncertain or speculative. *Wilkins*, 47 S.W.3d at 505; *Tex. Instruments, Inc. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994); *see also Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) ("[T]he injured party must do more than show that they suffered some lost profits."); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992) ("As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.").

Sanders's counsel acknowledged at oral argument that Sanders did not present competent evidence at trial with respect to the calculation of lost-profit damages, arguing instead that such evidence would have been presented had it not been for the district court's erroneous hearsay rulings.[3] A party alleging

---

[3] To the extent Sanders argues in his briefs that competent evidence had been presented, such evidence was far too speculative. Specifically, as the only potential evidence of lost-profit damages, Sanders's testimony did not contain any specific amount of lost profits or describe any means by which lost profits could be calculated. *See Szczepanik*, 883 S.W.2d at 648–50 (explaining the need to present evidence of how lost-profit damages were calculated and stating that showing that accounts were lost is insufficient). Indeed, similar to the situation in *Holt* where a plaintiff's bare assertion that he had lost contracts did not demonstrate lost profits with reasonable certainty, Sanders's assertion that he lost potential

error based on a district court's exclusion of evidence must have made an offer of proof at trial that informs the court of its substance, unless the substance of the evidence is apparent from the record. *See* FED. R. CIV. P. 103(a). Sanders's counsel admitted during oral argument that Sanders did not make any offer of proof concerning the lost-profit evidence that he would have otherwise presented but for the district court's hearsay ruling. Further, it is not apparent from the record that the substance of the excluded evidence—namely, Sanders's testimony concerning his interactions with investors and the calculations of business losses and valuations—would have allowed him to establish lost-profit damages with reasonable certainty. On this record, we cannot conclude that the district court erred in holding that Sanders presented insufficient evidence of lost profits.[4] *See United States v. John*, 597 F.3d 263, 276 (5th Cir. 2010) (explaining that in the absence of a proffer, an appellant cannot prevail on a direct challenge to the district court's hearsay ruling).

*B. Out-of-Pocket Expenses*

Sanders "estimated" that he spent $40,000–$50,000[5] in out-of-pocket expenses. However, apart from this vague, general statement, he provided no accompanying figures, data, or explanation as to how he calculated this amount of damages. He further provided no evidence to establish that he had

---

investors falls far short of establishing a reasonable certainty of lost profits. *See Holt*, 835 S.W.2d at 87.

[4] Because of this conclusion, we need not address whether Sanders's mere passing reference to his hearsay argument in his brief constituted waiver of this issue. *See Douglas W. ex rel. Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue.").

[5] It is not even clear what the $40,000–$50,000 estimate of "out of pocket" expenses includes given this exchange at trial: "Q: So sum total of the fees you paid Mr. Flanders, the cost of this litigation, your own out-of-pocket for travel costs associated with the – this product, just the out-of-pockets, you would estimate at what number? Sanders: Forty to 50- (sic) thousand."

actually paid this amount of money. As a result, the district court did not err in concluding that he presented an "unsubstantiated estimate" and failed to present competent evidence with respect to his out-of-pocket damages because the passing comments concerning his losses were "mere speculation or conjecture." *See Tate*, 24 S.W.3d at 635; *see also Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) ("Opinion testimony that is conclusory or speculative is not relevant evidence."); *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 323–24 (Tex. App.— San Antonio 2007, pet. denied) (evidence of damages was legally insufficient where opinion testimony as to actual damages was conclusory).

*C. Attorney's Fees*

Similarly, Sanders presented no evidence to support his estimate that he paid $10,000–$15,000 to Flanders in legal fees.[6]  Further, Sanders has failed to establish a legal basis to justify recovery of the approximately $3,800 that Flanders acknowledges receiving.  Specifically, a legal-malpractice plaintiff may recover damages for attorney's fees he paid in an underlying matter if the fees were proximately caused by the negligent conduct of the defendant attorney. *See, e.g.*, *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009).  Sanders presents no argument or evidence, however, that any of the attorney's fees he seeks to recover were incurred by him as a result of having to respond to or correct Flanders's allegedly negligent conduct.  In addition, while a plaintiff may recover attorney's fees when the attorney's negligence rendered his services of

---

[6] In the trial court, Sanders asserted that his damages were the same for the various theories of recovery and never sought "disgorgement" of fees as a remedy.  On appeal, Sanders's arguments concerning the recovery of attorney's fees focus only on his legal-malpractice theory, and he therefore has waived any argument that such fees could be disgorged under a breach-of-fiduciary-duty claim. *See Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010) ("Issues not briefed on appeal are waived.").

no value, Sanders acknowledged at trial that Flanders had performed at least *some* quality work for him. *See Judwin Props. v. Griggs & Harrison*, 911 S.W.2d 498, 507 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("Recovery of fees paid to an attorney may be appropriate [in a legal-malpractice claim] when his or her negligence rendered the services of no value."). Having failed to provide any evidence that the fees either were incurred in repairing Flanders's allegedly negligent conduct or paid in exchange for services of no value, Sanders did not present legally sufficient evidence to allow him to recover attorney's fees.

## IV. Conclusion

Because Sanders failed to present legally sufficient evidence of damages, the district court correctly granted judgment as a matter of law in favor of Flanders.

AFFIRMED.